# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**       **Docket No. 16-20003-003**
                               **HON. JUDITH E. LEVY**
        Plaintiff,

-vs-

**D-3 AHMAD R. LEWIS,**
        Defendant.
_____/

## SENTENCING MEMORANDUM

      Now comes Defendant, Ahmad Lewis, by Counsel, Robert F. Kinney, and represents that Defendant has reviewed the Probation Department's Pre-Sentence Investigation Report. Mr. Lewis does not dispute any of the facts or factors set out therein. However, the Defense submits that despite the sentencing guideline range of 60 months to life imprisonment, and the Rule 11 agreement that the defense would not ask for a sentence of less than 5 years to run consecutive to 14-20420, scheduled for sentencing before the Honorable Victoria A. Roberts, a sentence of five years is appropriate. The Defense and Mr. Lewis understand that, having pled guilty to Possession of a Firearm in furtherance of a Drug Trafficking Offense pursuant to 18 U.S.C. 924(c)(1)(A)(i) before this Honorable Court and to Possession with Intent to Distribute a Controlled Substance in front of Judge Roberts, the two sentencings Defendant Lewis now faces must run consecutive to each other contrary to the Rule 11 agreement before Judge Roberts. The Defense submits, the 18 U.S.C. 3553(a), (f) considerations and the spirit or intention of the Rule 11 Plea Agreements would suggest a sentence of 5 years, well below the Rule 11 maximum

sentence is within reason. Mr. Lewis respectfully asks this **HONORABLE COURT** to impose a sentence that complies with the possible mandatory minimum pursuant to the Rule 11, 18 U.S.C. 3553(a) for several reasons including, but not limited to the spirit of the Rule 11's in both cases, Mr. Lewis' remorse, negotiated plea of guilt, in both cases, his difficult personal characteristics and his particular involvement in the instant case.

## INTRODUCTION

Mr. Lewis will appear before this Court for Sentencing on October 31, 2017 having pled guilty to Count Three of the Indictment, pursuant to a Rule 11 Plea Agreement which charges him with Possession of a Firearm in Furtherance of a Drug Trafficking Offense pursuant to 18 U.S.C. 8924(c)(1)(A)(i). The maximum penalty is Life Imprisonment and a maximum two hundred fifty thousand ($250,000.00) dollar fine. Mr. Lewis remorsefully entered a plea of Guilty in the instant proceeding so that the Prosecution did not have to spend extensive time and effort preparing for trial.

## Determining A Sentence After Booker

THE UNITED STATES SUPREME COURT decided in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005) to finally erase the mandatory nature of the guidelines and declaring them advisory, made the guideline range a tool for District Courts to consider, instead of an edict that must be followed. District Courts must focus on all of the 3553(a) factors including the correct guideline range and any appropriate variances. Then the Sentencing Court must provide a reasonable explanation of sentencing decisions, whether within or outside the guideline range, for appellate review of its reasonableness. *United States v. Gall*, 552 U.S. ___, (2007); *States United v. Kimbrough*, 552 U.S. ___, (2007); and *United States v. Trejo-Martinez*,

481 F3rd 409 (CA 6, 2007)     In *Gall*, the defendant sold "ecstasy" with others while in college at the University of Iowa, an occupation that aided his use of ecstasy, cocaine and marijuana. He withdrew from this arrangement seven months later and has refrained from either selling or using illegal drugs ever since. Instead, he not only graduated from college, but maintained consistent employment as a master carpenter in Arizona, and later in Colorado. Approximately three and a half years after Gall withdrew from all criminal activity he was indicted in Iowa. Mr. Gall moved back to Iowa and was arraigned on the indictment. During the pendency of his case he opened his own subcontracting business. Subsequently, Mr. Gall entered into a plea agreement with the government that acknowledged he voluntarily withdrew from the criminal activity and that recent changes in the guidelines that enhanced the recommended punishment for distribution of ecstasy did not apply in his case. The Probation Department calculated a guideline range of 30 to 37 months in prison. However, the District Court found a sentence of 36 months' probation reflected the seriousness of his offense because he was not a danger to society, that imprisonment was unnecessary because of his voluntary withdrawal from criminal activity, and his post-offense conduct exemplified his determination not to return to criminal behavior. The District Court phrased his conduct as being "self-rehabilitated" yet reminded Mr. Gall that probation is a "substantial restriction of freedom … with harsh consequences… if he violates…".

The Court of Appeals reversed and remanded for resentencing holding that a sentence outside the guideline range must be supported by a justification that is "proportional to the extent of the difference between the advisory range and the sentence imposed." Gall, supra.

Our Supreme Court, in upholding the District Court's sentence, opined that, "the court of appeals rule requiring proportional justifications for departure's from the guidelines range is not consistent with our remedial opinion in *United States v. Booker*, *supra*, in that,…..the guidelines

are advisory and appellate review of sentencing decisions is now limited to determining whether they are reasonable." *Gall*, *supra*. See also, *Trejo-Martinez*, *supra*; and *United States v. Lalonde*, __ F3d __ (6th Cir. 2007; Doc. # 06-4536)

The Supreme Court also made clear that in applying the § 3353(a) factors, a sentencing judge "must make an individualized assessment based on the facts presented" by the case, without giving presumptive weight to the Guidelines sentencing range. *Id* at 596-597.

### SECTION 3553 (a)

### The History and Characteristics of the Defendant

Although the parties agree that the criminal record listed in pages 8-18 of the Presentence Investigation Report is a horrendous acknowledgement of social behavior, and a serious failure to abide by the law, yet still a list of drugs convictions and traffic violations over and over again. The explanation lies in pages 19-26. The Defense respectfully agrees with The Government in requesting the mandatory sentence of 5 years to run consecutive by statute to any other sentence.

Problematic for the Government's anticipated sentencing request for more than five years in the case before Judge Roberts is the failure to objectively evaluate the individualized circumstances that lead each Defendant, including my client, to be in his particular position. Mr. Lewis' first Felony Conviction was for a drug conviction that resulted from an arrest in a motor vehicle. In this instance, once again, history repeats itself.

Such a difficult start as a child seems to be a cyclical horror story for far too many young black males in our community. It is inevitable that many of our youth will began in an already difficult job market in Detroit. The Detroit News continues to report the fact there was not enough jobs in Detroit for Mr. Lewis, even though he tried. The latest workforce study indicates only 53% of working-age Detroit residents are employed. Detroit has 168,000 people who are

not employed, mainly young black men lacking education and training. Many have felony records, and many employers use that as an automatic reason to refuse to hire them. Most of these young men cannot remember a school system governed by a locally elected school board with an administration that cares more about graduating students. Instead their entire educational experience has been led by a state appointed emergency manager whose intent seems to have been the dismantling of DPS and transferring the most viable schools to privately run schools Detroit must pay for while students like Mr. Lewis are discouraged from continuing educational opportunities surpassing a GED. Most attempt to get GED certificates while in prison or on probation.

The real results of economic racism, nearly two-thirds of working Detroiters commute to jobs outside the city and without sufficient public transportation, run the gamut of suburban police giving more tickets to our youth than whites. These young people go to court, given time to pay court costs and fines, but any violation including the inability to pay ends in poor traffic records which leads to misdemeanor records because they continue to drive to work. Yet nearly 75% of jobs in Detroit are held within the city are held by people who live outside Detroit.[1]

Unfortunately, environmental racism compounds our community's problems. Ever notice the express portion of I-96; to Detroiters this allows suburbanites to safely travel to downtown Detroit without any interaction with Detroit's west-side economy. State Government always cared about certain Detroit communities like the downtown districts but residential communities like where Mr. Lewis was raised, was literally abandoned, moreover intentionally destroyed by those in office the residents were supposed to rely on.

Undersigned Counsel doesn't want this Honorable Court to draw the conclusion that Mr. Lewis decided that a life of crime was the only way he wanted to support his family. He

---

[1] Detroit News Article; 1/17/2016.

attempted several times to gain legal employment, even working briefly at odd jobs until he learned from older people that this is the way to survive. Unfortunately this was a young man who not only missed childhood but was abused by every adult he met, starting with those responsible for him.

Another unfortunate aspect of our community is substance abuse, or what the defense community calls self-medication. Devastating for young addicts being used by Dealers to, as pizza delivering college students do, only in his community it was delivering illegal drugs. Mr. Lewis unwittingly faced immediate death, and eventually a life in and out of prison. Unfortunately he never really had a chance to be capable of being a man, supporting a family. The Depression from circumstances like what Mr. Lewis has dealt with in his life calls for some mitigation. A sentence based on a return to society instead of one that forever protects society from our creation, education, psychological attention including counseling would be a great new beginning.

Regretfully, our society suffers from enough young men falling prey to the unfortunate trappings of the drug trade, older men offering death and/or imprisonment under the guise of love and family loyalty. Yet, at some point society must accept and rectify the way we as a community help raise our children. Undersigned Counsel believes the Presentence Report, and as explained through the lack of attached letters from family and friends, shows he is one of us in need. Mr. Lewis, like all young men, not only yearn for the love and affection of their father figures, but desperately need the direction and protection against those in our community who prey on our youth and teach them not to read but indulge in criminal behavior.

Now Undersigned Counsel urges this **HONORABLE COURT** to consider this request for the mandatory minimum 5 years consecutive specifically to Judge Roberts' sentence,

considering both Rule 11 plea agreements and the interest of rehabilitating what some believe is a loved one in our community. Mr. Lewis accepted the instant Rule 11 and stands ready for sentencing.

### The Traditional Purposes of Punishment

While undoubtedly the instant offense is a serious one, the Defense submits a sentence of 5 years and a term of considerable supervised release with all of its potential monitoring, educational and rehabilitative provisions is more than enough punishment to deter not only others from committing like offenses, but to dissuade Defendant from future illegal conduct. Mr. Lewis' actions towards settling these criminal actions with remorse certainly suggest he understands the consequences of his actions, and his behavior characteristic is to strive to avoid criminal conduct and with a little more community support be a respectable attribution to his community.

Respectfully submitted,

/s/ Robert F. Kinney
Robert F. Kinney
Attorney for Defendant
615 Griswold Street, Suite 1300
Detroit, MI 48226
(313) 963-5310 (office)
(313) 963-5315 (fax)
rfkinney@sbcglobal.net
Attorney Bar No. P35842

Dated: October 16, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

/s/ Robert F. Kinney
Robert F. Kinney
Attorney for Defendant
615 Griswold Street, Suite 1300
Detroit, MI 48226
(313) 963-5310 (office)
(313) 963-5315 (fax)
rfkinney@sbcglobal.net
Attorney Bar No. P35842